# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAHAI PTY, LTD., ) | |
|     Plaintiff, ) | |
| ) | No. 09 CV 7350 |
| v. ) | Judge Blanche M. Manning |
| ) | |
| SASSY, INC., ) | |
|     Defendant. ) | |

## MEMORANDUM AND ORDER

Babies love gnawing on chew toys developed by defendant Sassy, Inc. In this country, Sassy is one of the leading developers of baby products, but in 2002 its sales in Australia were not what it had hoped. To boost sales, Sassy entered into distributorship agreements with plaintiff Sahai Pty, Ltd., first a five-year agreement in 2002, superseded by a five-and-a-half-year agreement in 2006. But by 2009, the parties' relationship had soured and Sassy purported to terminate the 2006 agreement, after which Sahai sued Sassy for breach of contract and wrongful termination.

Before the court is Sassy's motion for judgment on the pleadings and Sahai's motion to amend its complaint. For the reasons that follow, the motions are granted in part and denied in part.

## BACKGROUND

The following facts are taken from the allegations of the complaint and deemed to be true for purposes of resolving the pending motions. *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Sahai began distributing Sassy products in Australia after the parties entered into a Distributorship Agreement in 2002. Sahai invested substantial time and resources into growing the Sassy brand in Australia and, as a result, Sassy became a well-known line of

products and sales grew year after year. In fact, Sahai was the runner-up for Sassy's "Highest Percentage Sales Increase for 2004" award. As a result of Sahai's performance, it and Sassy entered into a new Distributorship Agreement one year before the old agreement had been set to expire. The new Distributorship Agreement began on July 13, 2006, and was to continue through at least 2011, and could be extended for successive three-year periods by mutual agreement.

The 2006 Distributorship Agreement included several provisions that are now at issue in this case. First, in paragraph one, Sassy represented that "it is possessed of all right, title, and interest in and to the Products, free and clear of all liens, encumbrances, security interests, restrictions, and claims thereover." *Id.* ¶ 1. Next, in paragraph 14, Sassy agreed to make its entire line of developmental toy and bath products available to Sahai, update the list of products that were available yearly, and Sahai agreed to purchase minimum quantities of toys:

> DISTRIBUTOR agrees to expend its best efforts in purchasing, marketing, promoting, advertising, distributing, and selling, wholly within the Territory, the Products supplied to it by Sassy, Inc. under this Agreement. DISTRIBUTOR will from the year starting 01/01/2006 buy a yearly minimum of $580,000 for the territory. The items in schedule A shall include all available products in Sassy, Inc.'s Developmental Toy line and Bath line, and will be updated yearly in accordance with Sassy, Inc.'s product development in these two product lines. DISTRIBUTOR will increase the minimum to $638,000 for year 2007, $700,00 for year 2008, $770,000 for year 2009, $847,000 for year 2010 and $932,000 for year 2011. It is further agreed that the Distributor and Sassy, Inc. will renegotiate the contract to set new minimums for year 2012 and thereafter.

Distributorship Agreement (attached as Exhibit A to the Complaint [3-1]) ¶ 14.

Paragraphs 24 and 26 describe the circumstances under which the Distributorship Agreement could be terminated. Under paragraph 24, Sassy could terminate "with cause, upon

ninety (90) days written notice, at which time all payments and obligations of DISTRIBUTOR, if any, shall become automatically due and payable within thirty (30) days." *Id.* ¶ 24. Additionally, under paragraph 26:

> Material breach of this Distributorship Agreement by either party constitutes grounds for termination by the other party of the terms of the Distributorship Agreement, and its responsibilities thereunder, without waiving its respective rights to recover incurred damages. Upon occurrence of a material breach, the non-breaching party shall have the duty to notify the breaching party of the occurrence of same, and permit that party to correct or otherwise resolve the basis for breach within thirty (30) days of the receipt of said notification.

*Id.* ¶ 26. Finally, the Distributorship Agreement contained a non-waiver clause:

> Failure or delay of either party at any time to require performance or otherwise enforce its rights under this Agreement shall not be construed to be a waiver of such rights.

*Id.* ¶ 32.

Sahai's sales of Sassy products continued to grow after the parties entered into the 2006 Distributorship Agreement. Sales during the fiscal year ending June 2006 totaled $1.5 million, while sales during the fiscal year ending June 2007 grew to $2 million. In 2007, Sassy awarded Sahai its "Largest Sales Increase for Sassy Distributors 2007" award.

However, beginning in 2007, Sahai alleges that Sassy stopped developing new developmental toys and bath items. At the same time, Sahai's biggest retail customers grew disinterested in the old Sassy items and stopped ordering them. As a result, Sahai's sales of Sassy products dropped dramatically. While it had purchased $736,588 of products from Sassy in 2007, it purchased just $344,134 of products in 2008, well below the $700,000 minimum purchased required under the terms of the Distributorship Agreement. In addition, Sahai found

itself stuck with a large inventory of Sassy products that retailers no longer want and which are, essentially, unmarketable.

Despite Sahai's difficulties selling Sassy products, it nevertheless purchased about $350,000 of additional inventory from Sassy in 2009, and spent another $350,000 on overhead incurred in marketing Sassy products. It also worked with Sassy to acquaint major Australian retailers with new products that Sassy planned to introduce into the Australian market in early 2010.

But on August 28, 2009, Sassy's president called Sahai to announce that Sassy was terminating the parties' Distributorship Agreement. Sassy then sent Sahai a letter purporting to terminate the agreement for cause, specifically, for being "in breach of the minimum purchase obligation for 2008, as set forth in Section 14 of the Agreement. Based on year-to-date sales for 2009, Sahai is also likely to breach the 2009 minimum purchase commitment." August 28, 2009, letter (attached as Exhibit C to the Complaint [3-1]). Sahai contends that its failure to meet sales requirements was not the real reason Sassy purported to terminate the distributorship. The real reason, Sahai contends, is that Sassy decided to distribute its products itself through its sister company, Kids Line, which had a preexisting presence in Australia and sold its own line of children's bedding there.

In response to the purported termination, Sahai filed suit against Sassy, Inc. In its original complaint, it alleges two claims against Sassy. In Count I, it alleges that Sassy breached the Distributorship Agreement by failing to update its bath and development toy lines as required under Paragraph 14 of the agreement. In Count II, it alleges that Sassy breached the Distributorship Agreement by purporting to terminate it for reasons other than those identified by

the agreement as valid grounds for termination. Sahai has also filed a motion for leave to file an amended complaint. The proposed amended complaint contains Counts I and II that are virtually identical to those counts in the original complaint. It would also add Count III, in which Sahai alleges that Sassy breached the Distributorship Agreement by misrepresenting in the agreement that its products were "free and clear of all liens, encumbrances, security interests, restrictions, and claims thereover" when, in fact, the products were collateral pledged for a loan that Sassy obtained from the former LaSalle Bank.

Sassy objects to Sahai's motion for leave to file an amended complaint, arguing that the motion for leave should be denied because the proposed amendments are futile. It also moves for judgment on both counts I and II in the original complaint, arguing that Sahai's claims are baseless in light of the language of the Distributorship Agreement.

## ANALYSIS

I. **Judgment on the Pleading**

    A. **Standard of Review**

Federal Rule of Civil Procedure Rule 12(c) permits a party to "move for judgment on the pleadings" once the pleadings are closed. Fed. R. Civ. P. 12(c); *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The standard for judgment on the pleadings is the same as the dismissal standard under Rule 12(b)(6). *See Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). Thus, the court shall view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if the plaintiff's allegations fail to state a plausible claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However,

the court "need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law." *Pisciotta*, 499 F.3d at 633.

### B. Count I (Breach of Contract — Failure to Develop New Products)

Sassy moves for judgment on Count I of the complaint, in which Sahai alleges that Sassy breached its obligation to develop new products each year. Sahai contends that Sassy's obligation to develop new products each year can be found in the following language from paragraph 14 of the Distributorship Agreement:

> The items in schedule A [a list of Sassy products available to Sahai] shall include all available products in Sassy, Inc.'s Developmental Toy line and Bath line, *and will be updated yearly in accordance with Sassy, Inc.'s product development in these two product lines*.

Distributorship Agreement (attached as Exhibit A to the Complaint [3-1]) ¶ 14 (emphasis added).

Construction of an unambiguous contract is a question of law. *See Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 791 (N.D. Ill. 2010). Under Illinois law (which the parties agree governs), contractual language is unambiguous if it lends itself only to one reasonable interpretation. *See Gallagher v. Lenart*, 874 N.E.2d 43, 50 (Ill. 2007). The mere fact that the parties do not agree on a single interpretation of a contractual provision does not, alone, render the provision ambiguous. *See Fleet Business Credit, LLC v. Enterasys Networks, Inc.*, 816 N.E.2d 619, 630 (Ill. 2004). If the language in dispute is unambiguous, the court is to give effect to the parties' intent, as determined by looking to the language of the contract alone, and interpreting the language according to its plain and ordinary meaning. *See Gallagher*, 874 N.E.2d at 58.

Sahai's interpretation of Sassy's obligations under paragraph 14 is unsupported by the plain and ordinary meaning of the language used in the Distributorship Agreement. Sassy's obligation under paragraph 14 is to update the list of available products. Nothing obligates Sassy to update the products themselves. Furthermore, Sassy's obligation to update its list of products is limited by the phrase "in accordance with Sassy, Inc's product development in these two product lines." Thus, in the event that no product development occurred, Sassy would have had no new products to add to schedule A during its yearly update.

Nevertheless, Sahai contends that it can still establish that Sassy breached its obligations under paragraph 14 because (1) to the extent that the development of new products was left to the discretion of Sassy, it exercised its discretion in bad faith, and (2) Sassy breached its obligation to include on schedule A "all available products in Sassy, Inc.'s Developmental toy line and Bath line." Neither contention is compelling. First, the court has already determined that nothing in the contract obligated Sassy to develop new products. Second, the allegations of the complaint do not suggest that Sassy refused to include available toys on schedule A. Rather, according to the allegations, Sassy "devoted a disproportionate amount of its resources into *developing* a product line called "BeBe" for Wal-Mart stores in the United States to be marketed to the Spanish-speaking consumer market." Complaint [3-1] ¶ 37 (emphasis added). The complaint does not suggest that the BeBe toys ever became available but that Sassy refused to sell them to Sahai and, in any event, Sahai alleged that the "Bebe product line was of no value to international distributors" like itself. *Id.*

Because paragraph 14 did not obligate Sassy to develop new products, Sahai has not plausibly suggested that Sassy breached its obligations under paragraph 14 by failing to develop new products. Accordingly, Sassy's motion for judgment on count I is granted.

### C.     Count II (Breach of Contract — Wrongful Termination)

Next, Sassy moves for judgment on the pleadings on count II, arguing that Sahai has failed to state a plausible claim of wrongful termination. Under the terms of the Distributorship Agreement, Sassy was entitled to terminate the contract early if either (1) it had cause, or (2) Sahai materially breached the contract. Put another way, Sassy's purported termination was wrongful only if *both* (1) it lacked cause, *and* (2) Sahai's failure to meet the minimum purchase requirement was not a material breach.

Whether Sahai's failure to meet minimum purchase requirements was a material breach or whether it provided Sassy with cause to terminate are both questions of fact that preclude entry of judgment. Under Illinois law, a party who has a contractual right to terminate for cause must exercise its discretion to terminate in good faith. *See Smart Marketing Group, Inc.*, No. 04 CV 146, 2008 WL 4287704, at *9 (N.D. Ill. Sept. 11, 2008). Whether it exercised that discretion in good faith is a question of fact. *Id.* Sassy cites *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395-96 (7th Cir. 2003), in support of its argument that it was not burdened by the duty to act in good faith. However, the contract at issue in *Cromeens* gave each party the right to terminate *without* cause. *Id.* The case does not address a party's duty to act in good faith when it has only the right to terminate *for* cause and, therefore, the case is inapposite.

Likewise, the materiality of a breach involves questions of fact. Under Illinois law, a breach is material "when a party to the contract fails to perform an element of the agreement

without which the contract would not have been made." *MAN Roland, Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 568, 570 (N.D. Ill. 1999) (internal quotation marks and citation omitted). As the Seventh Circuit has noted:

> the determination of "materiality" is a complicated question of fact, involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage.

*Sahadi v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 706 F.2d 193, 196 (7th Cir. 1983); *see also Chapman v. VLM Entertainment Group, Inc.*, No. 00 CV 7791, 2002 WL 1610970, at *4 (N.D. Ill. Jul. 22, 2002) (whether a breach is material is a question of fact).

Therefore, the court cannot determine as a matter of law whether Sahai's breach was material or whether Sassy exercised its discretion in good faith. Because these both involve questions of fact, the court is precluded from entering judgment in Sassy's favor on count II of Sahai's complaint. Accordingly, the motion for judgment on count II is denied.

## II. Leave to File an Amended Complaint

The court turns now to Sahai's motion for leave to file an amended complaint. The amended complaint contains three counts. Amended Count I appears to be identical to Count I of the original complaint. Amended Count II is essentially the same but contains the following allegation not in the original complaint: "Sassy's purported reasons for terminating the Distributorship Agreement do not constitute contractual cause or a material breach by Sahai." Proposed Amended Complaint (attached as Exhibit 1 to Motion for Leave [50-1]) ¶ 79. Proposed Count III adds an entirely new claim of breach of contract based upon Sassy's alleged

failure to comply with paragraph 1 of the Distributorship Agreement, in which Sassy represented that "it is possessed of all right, title, and interest in and to the Products, free and clear of all liens, encumbrances, security interests, restrictions, and claims thereover." Distributorship Agreement (attached as Exhibit 1 to Complaint [3-1]) ¶ 1.

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading shall be given freely "when justice so requires." Leave need not be granted in every case, however. *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002). Reasons to deny leave include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Sassy argues that the amendments are futile for the following reasons: (1) the additional allegation in Count II that Sahai's failure to meet minimum purchase obligations was not a material breach is implausible; (2) Count II alleges a claim of promissory estoppel, which is untenable given that the parties had entered into a binding contract; and (3) Count III fails to allege any damages caused by Sassy's purported breach.[1]

---

[1]Sassy also notes that the Sahai's brief discusses only the proposed addition of Count III to the complaint, failing to alert the court to the language Sahai also seeks to add to Count II. However, the additional language is consistent with and merely expands upon the existing allegations of Count II. Moreover, the proposed amended complaint is attached to the brief and the additional language is apparent upon comparing it to the original complaint. Therefore, the court declines to reject the amendment based solely on Sahai's failure to call attention to the additional language in its brief.

### A. Breach of Contract (Amended Count I)

The court has already determined that Sassy is entitled to judgment on Count I of the original complaint. Because the allegations of amended Count I are identical, granting leave to file amended Count I would be futile. Therefore, the request for leave is denied.

### B. Plausibility of Material Breach Allegations (Amended Count II)

First, Sassy argues that Sahai's allegation that it did not materially breach the parties' contract is implausible because the failure to meet a minimum quantity term is necessarily material. Sassy cites no authority to support its position, and instead argues that the allegation that Sahai did not materially breach the contract by failing to purchase a minimum quantity of goods "flies in the face of common sense." Response [53-1] at 10.

As noted earlier, under Illinois law when a contract is silent on what breaches are material, the "determination of whether a breach of a contract is material is a complicated question of fact," the resolution of which turns on "the intent of the parties as evidenced in large part by the full circumstances of the transaction." *Sahadi v. Continental Ill. Nat'l Bank & Trust Co.*, 706 F.2d 193, 196 (7th Cir. 1983). Accordingly, the court cannot ascertain at this stage of the litigation whether the failure to meet a minimum quantity term is a material breach, and Sahai's claim that it did not materially breach the contract is plausible.

### C. Promissory Estoppel (Amended Count II)

Next, Sassy argues that Sahai has alleged a claim of promissory estoppel in Count II, but promissory estoppel is a quasi-contractual claim that cannot succeed between parties to a contract. The court has carefully reviewed the allegations of Count II, which simply allege that Sassy had no contractual right to terminate the parties' contract. Thus, the claim is one for

breach of contract, not promissory estoppel. Accordingly, Sassy's arguments about promissory estoppel do not provide a basis for denying the motion for leave to amend.

### D. Sufficiency of Damages Allegations (Proposed Count III)

Finally, Sassy argues that leave to file proposed Count III should be denied as futile because Sahai has not sufficiently alleged any damages that flowed from Sassy's alleged misrepresentations about encumbrances and liens. However, in proposed Count III Sahai alleges that it relied on Sassy's representation when deciding whether to enter into the Distributorship Agreement. Proposed Amended Complaint (attached as exhibit 1 to Motion for Leave [50-1]) ¶ 91. It is therefore plausible that had Sassy revealed the existence of encumbrances and liens, Sahai would not have entered the Distributorship Agreement and, therefore, would not be "stuck with a vast quantity of unmarketable inventory of Sassy products." *Id.* ¶ 95. Sahai has therefore sufficiently alleged a plausible ground for relief. *See Iqbal*, 129 S. Ct. at 1949.

## CONCLUSION

For the reasons stated, Sassy's motion for judgment on the pleadings [29-1] is granted in part and denied in part as follows: Sassy's request for judgment on Count I is granted, and on Count II is denied. Sahai's motion for leave to file an amended complaint [50-1] is granted in part and denied in part as follows: leave to file amended Count I is denied, while leave to file amended Count II and proposed Count III is granted. Sahai shall file its amended complaint (with Counts II and III renumbered to be Counts I and II) no later than October 15, 2010. The parties shall report for a status hearing before this court on November 18, 2010, at 11:00 a.m.

ENTER:

DATE: September 20, 2010

_____
Blanche M. Manning
United States District Judge